**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2026 APR 17  AM 10: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| DANNY DAMIGELLA,<br><br>       *PLAINTIFF*<br><br>v.<br><br>MASSACHUSETTS BRICKLAYERS AND<br>MASONS HEALTH AND WELFARE FUND,<br>MASSACHUSETTS BRICKLAYERS AND<br>MASONS PENSION FUND,<br>MASSACHUSETTS BRICKLAYERS AND<br>MASONS ANNUITY FUND, and CHARLES<br>RASO II, individually and in his capacity<br>as Trustee, Fiduciary, Plan Administrator,<br>and Notary Public,<br><br>       *DEFENDANTS* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **CIVIL ACTION NO.:**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

This is an action for equitable and monetary relief arising from breaches of fiduciary duty under ERISA, fraudulent and unauthorized distributions of retirement assets, and related misconduct including forged documentation and false notarizations and distributions.

More particularly, this action arises from a series of unauthorized withdrawals and loan transactions taken from Plaintiff Danny Damigella ("Plaintiff")'s retirement assets held within ERISA-governed plans administered by Defendants. The transactions were processed based upon documents purporting to bear Plaintiff's signature and notarized certifications attesting that Plaintiff personally appeared and executed those documents. Plaintiff did not sign those documents. Plaintiff did not appear before any notary in connection with those transactions. Plaintiff did not authorize any person to execute documents on his behalf.

1

Notwithstanding the absence of valid execution and lawful consent, Defendants approved and processed multiple distributions over a period of years, thereby depleting Plaintiff's retirement assets and interests. Defendant Charles Raso, II, acting both as a fiduciary of the plans and as a commissioned notary public, personally participated in the certification and/or approval of one or more of the documents used to effectuate these transactions, falsely attesting to Plaintiff's presence and execution. Upon information and belief, Defendant Raso was aware of and/or participated in the processing and approval of additional transactions that were forged and fraudulent. The conduct at issue reflects not a singular clerical error but a pattern of failures in fiduciary oversight, internal controls, and compliance with statutory safeguards designed to protect plan participants from such fraudulent withdrawals and distributions.

Plaintiff did not discover the existence or nature of these transactions until the very end of April 2023/beginning of May 2023, when Defendants produced records in response to a subpoena issued in his divorce proceedings. Only upon review of those records did Plaintiff learn that documents bearing his purported signature had been used to authorize distributions.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), as this action arises under the Employee Retirement Income Security Act ("ERISA").

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2

3.  Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, as the plans are administered in this District and the acts giving rise to these claims occurred herein.

## **PARTIES**

4.  Plaintiff hereby re-alleges and re-incorporates paragraphs 1-3 as if set forth again here.

5.  Plaintiff Danny Damigella is a resident of Braintree, Massachusetts and, at all relevant times, was a participant and/or beneficiary of the Bricklayers Funds.

6.  Defendant Massachusetts Bricklayers and Masons Health and Welfare Fund is an employee welfare benefit plan within the meaning of ERISA and maintains a principal place of business at 645 Morrissey Boulevard, Boston, Massachusetts.

7.  Defendant Massachusetts Bricklayers and Masons Pension Fund is an employee pension benefit plan within the meaning of ERISA and maintains a principal place of business at 645 Morrissey Boulevard, Boston, Massachusetts.

8.  Defendant Massachusetts Bricklayers and Masons Annuity Fund is an employee benefit plan within the meaning of ERISA and maintains a principal place of business at 645 Morrissey Boulevard, Boston, Massachusetts.

9.  Defendant Charles Raso, II is, upon information and belief, a trustee, fiduciary, and/or plan administrator of one or more of the foregoing Defendants, with discretionary authority over the administration of the plans and the approval of distributions.

10. Defendant Raso was also, at all relevant times, a commissioned notary public in the Commonwealth of Massachusetts and purported to witness and certify the execution of documents relied upon in connection with the transactions at issue and/or oversaw the transactions at issue.

11. Upon information and belief, and thereby it is herein alleged, Defendants are, and were at all relevant times, acting individually and, where applicable, as agents, employees, trustees, or fiduciaries of the other Defendants, and in doing of the things herein alleged, were acting within the course and scope of such employment and agency to and between each other. Accordingly, hereinafter Defendant Massachusetts Bricklayers and Masons Health and Welfare Fund, Defendant Massachusetts Bricklayers and Masons Pension Fund, and Defendant Massachusetts Bricklayers and Masons Annuity Fund shall be known collectively as "Bricklayers Funds".

## FACTUAL ALLEGATIONS

12. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-11 as if set forth again here.

13. Plaintiff maintained retirement assets within the Bricklayers Funds, including annuity funds intended for long-term financial security.

14. Those assets were subject to statutory protections under ERISA, including requirements governing distributions and spousal consent.

15. Certain distributions from retirement accounts require valid spousal consent, which must be knowingly executed and properly witnessed or notarized.

16. The purpose of these requirements is to ensure that plan participants are protected from unauthorized depletion of retirement assets.

17. Records produced by Defendants reflect that multiple withdrawals and loan transactions were processed from Plaintiff's accounts over a period of years, including transactions in or about 2013, 2014, 2017–2018, 2019, and 2020.

4

18. Each of these transactions was supported by documentation purporting to contain Plaintiff's signature and, in many instances, notarized certifications attesting that Plaintiff personally appeared and executed the documents.

19. Plaintiff did not sign these documents.

20. Plaintiff did not appear before any notary in connection with these transactions.

21. Plaintiff did not authorize any person to sign documents on his behalf.

22. The notarizations associated with these documents falsely certify Plaintiff's personal appearance.

23. Upon information and belief, Defendant Raso personally notarized one or more of these documents, certifying Plaintiff's presence when Plaintiff was not present.

24. The documents associated with the transactions contain additional irregularities, including inconsistencies in identifying information, incomplete execution, and repeated reliance on similar forms across multiple transactions.

25. These irregularities were apparent on the face of the documents and should have prompted further inquiry by any reasonable fiduciary.

26. Defendants nevertheless processed the transactions without requiring meaningful verification of Plaintiff's identity or execution.

27. Defendants failed to implement or enforce adequate safeguards to prevent unauthorized withdrawals.

28. Defendants failed to investigate or halt transactions despite the presence of red flags indicating improper execution.

29. Defendants failed to provide Plaintiff with timely and meaningful notice sufficient to alert him to the existence of these transactions.

30. As a result, Plaintiff remained unaware of the withdrawals and loan transactions for years.

31. In April 2023, during divorce proceedings, Plaintiff caused subpoenas to be issued to the Bricklayers Funds seeking records relating to all his accounts, including those where he had any interest.

32. Defendants were required to respond on April 24, 2023.

33. Defendants responded with documents on or after April 24, 2023.

34. Upon review of those documents, in or about the last few days of April 2023 and early May 2023, Plaintiff discovered, for the first time, that withdrawals had been made from his accounts and accounts in which he had an interest based on documents bearing his purported signature.

35. Plaintiff immediately recognized that he had not signed those documents and had not appeared before any notary.

36. There were deficiencies in the signature as well, including at least one instance in which the name "Daniel" was used in both the form and signature instead of Plaintiff's legal and actual name, "Danny".

37. The documents relied upon by Defendants were not merely incomplete or irregular; they were forged instruments bearing Plaintiff's purported signature without his knowledge or consent. The signatures appearing on those documents are not Plaintiff's signatures.

38. The notarizations associated with those documents falsely certify that Plaintiff personally appeared before the notary and executed the documents. Plaintiff did not appear before any notary in connection with the transactions at issue. Plaintiff did not execute the documents, and he did not authorize any person to execute them on his behalf.

39. These forged and falsely notarized documents were material to, and in fact formed the sole basis for, the approval and processing of the subject withdrawals and loan transactions. Without those documents, the transactions could not lawfully have occurred.

6

40. Defendants accepted, relied upon, and acted on these forged instruments without undertaking reasonable steps to verify their authenticity, despite the existence of facial irregularities and the availability of procedures to confirm execution and identity. In doing so, Defendants enabled the unauthorized depletion of Plaintiff's retirement assets.

41. These failures were not inadvertent; they reflect a breakdown in basic controls that a prudent fiduciary would have implemented and enforced.

42. The documents relied upon by Defendants were not merely defective; they were forged and fraudulently notarized instruments that could not lawfully support any distribution of plan assets.

43. Prior to that time, Plaintiff had no actual knowledge of the transactions or the fraudulent documentation used to effectuate them.

44. Plaintiff did not have actual knowledge of the breaches prior to the end of April and early May 2023 and could not reasonably have discovered the misconduct earlier due to Defendants' concealment of the underlying documents.

45. Defendants' failure to provide the underlying documents or otherwise communicate the transactions to Plaintiff actively concealed the misconduct and prevented Plaintiff from discovering it through the exercise of reasonable diligence.

46. The Norfolk Probate and Family Court divorce proceedings addressed the division of marital assets, including monies in the funds for the Plaintiff and his now ex-wife, but did not adjudicate the validity of the transactions or the authenticity of the documents relied upon by Defendants.

47. The injuries suffered by Plaintiff arise from the unlawful depletion of his retirement assets and the failure of Defendants to comply with their legal obligations, not from the subsequent division of assets in the divorce.

7

## COUNT I
## Breach of Fiduciary Duty Under ERISA (29 U.S.C. §§ 1104, 1109, 1132)
### (against all Defendants)

48. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-47 as if set forth again here.

49. Defendants were fiduciaries within the meaning of ERISA.

50. As fiduciaries, Defendants were required to act solely in the interest of plan participants and beneficiaries and to exercise the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity would use.

51. Defendants breached those duties by processing transactions based on documents that were not executed by Plaintiff and did not satisfy statutory requirements for valid consent.

52. Defendants failed to verify Plaintiff's identity and execution of the documents.

53. Defendants accepted and relied upon notarizations that falsely certified Plaintiff's personal appearance when he did not appear.

54. Defendants failed to detect and investigate irregularities that were apparent on the face of the documents.

55. Defendants failed to implement and enforce reasonable safeguards to prevent unauthorized withdrawals.

56. Defendants further breached their fiduciary duties by failing to monitor plan operations and personnel and failing to prevent unauthorized distributions, including the execution and notarization of participant documents, and by failing to implement controls to prevent the use of forged or improperly executed instruments.

57. Defendants failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent fiduciary acting in a like capacity would use.

8

58. As a direct and proximate result of Defendants' conduct, breaches, and violations, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

59. Plaintiff seeks all relief possible, including equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including surcharge, restitution, and other appropriate equitable remedies.

## COUNT II
### Failure to Comply with ERISA Distribution Requirements
*(against all Defendants)*

60. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-59 as if set forth again here.

61. ERISA requires valid spousal consent for certain distributions.

62. Such consent must be knowingly executed and properly witnessed or notarized.

63. Plaintiff did not execute the documents at issue.

64. Plaintiff did not appear before any notary.

65. The notarizations were invalid.

66. Defendants nevertheless processed the transactions.

67. These actions violated ERISA and governing plan requirements.

68. The transactions at issue were not merely procedurally defective; they were invalid as a matter of law and could not be processed in the absence of valid spousal consent.

69. The distributions were therefore void and/or voidable and improperly processed under the terms of the plan and applicable federal law.

70. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

## COUNT III
### Fraud and Fraudulent Concealment

9

*(against all Defendants)*

71. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-70 as if set forth again here.

72. Defendants, directly and through their agents, processed and approved withdrawals and loan transactions based upon documents that falsely represented that Plaintiff had executed and authorized those transactions.

73. Those documents included signatures purporting to be Plaintiff's and notarizations certifying that Plaintiff personally appeared and executed the documents. Those representations were false. Plaintiff did not sign the documents and did not appear before any notary.

74. The authenticity of Plaintiff's signature and the validity of the notarizations were material to the approval of the transactions. Defendants knew, or at a minimum recklessly disregarded, that the documents were not properly executed and did not comply with applicable requirements.

75. The foregoing conduct satisfies the particularity requirements of Rule 9(b), including the identification of the documents, the nature of the misrepresentations, the parties involved, and the time frame of discovery.

76. Defendants nevertheless relied upon those documents and represented, by their conduct, that the transactions were valid and authorized.

77. Defendants further failed to disclose to Plaintiff that withdrawals had been processed based upon such documentation and failed to provide Plaintiff with access to the underlying instruments, thereby concealing the nature of the transactions.

78. The misrepresentations were made through written instruments submitted to and relied upon by the Bricklayers Funds in connection with each of the transactions identified above.

10

79. Defendants relied upon these false representations in processing the transactions, and Plaintiff relied upon Defendants' lawful administration of the plan at all times.

80. As a result of Defendants' misrepresentations and concealment, Plaintiff did not discover, and could not reasonably have discovered, the existence of the forged documents and unauthorized transactions until the end of April and early May 2023, when records were produced in response to subpoena.

81. Plaintiff relied on Defendants to administer the plans in accordance with law and to protect the integrity of his accounts. Defendants' conduct caused Plaintiff to suffer financial loss, including the depletion of retirement assets and the loss of associated investment growth and other financial consequences.

82. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

## COUNT IV
### Negligence
### (against all Defendants)

83. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-82 as if set forth again here.

84. Defendants owed Plaintiff a duty of reasonable care in administering plan assets.

85. Defendants breached that duty by failing to verify execution, failing to ensure proper notarization, and failing to detect irregularities.

86. Defendants failed to exercise reasonable care in verifying identity, confirming execution, ensuring valid notarizations, and reviewing documentation for irregularities. Defendants further failed to adopt and enforce policies sufficient to prevent unauthorized transactions.

11

87. Such failures constitute a deviation from the standard of care applicable to fiduciaries and plan administrators.

88. Defendants' conduct constituted not only negligence, but gross negligence in light of the obvious irregularities and the fiduciary context in which they operated, including permitting notarizations to be executed without Plaintiff's presence.

89. The harm suffered by Plaintiff was foreseeable and preventable.

90. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

## COUNT V
## Conversion
### (against all Defendants)

91. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-90 as if set forth again here.

92. Defendants exercised control over Plaintiff's funds without valid authorization.

93. The funds were wrongfully withdrawn and not returned.

94. The funds were wrongfully taken, exercised dominion over, and distributed without Plaintiff's authorization or lawful basis.

95. Plaintiff had a superior right to possession of the funds at all relevant times.

96. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

## COUNT VI
## Notarial Misconduct and Fraud
### (against Defendant Raso)

97. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-96 as if set forth again here.

98. Defendant Raso, acting as a notary public, certified that Plaintiff personally appeared and executed documents.

99. Plaintiff did not appear before Defendant Raso and did not execute the documents.

100. These certifications were false.

101. The notarizations were material to the transactions.

102. Defendant Raso's conduct enabled the unauthorized withdrawal of Plaintiff's funds.

103. Defendant Raso knew, or should have known, that the certifications were false at the time they were made.

104. Defendant Raso's conduct violated the duties imposed upon a notary public under Massachusetts law, including the requirement of personal appearance and truthful certification.

105. As a direct and proximate result of Defendant Raso's conduct, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

## COUNT VII
### Individual Breach of Fiduciary Duty
#### (against Defendant Raso)

106. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-105 as if set forth again here.

107. Defendant Raso owed fiduciary duties directly to Plaintiff.

108. Raso breached those duties by personally participating in or approving transactions based on invalid documentation.

13

109. Raso failed to ensure compliance with ERISA requirements and failed to safeguard plan assets.

110. Defendant Raso's conduct was knowing, reckless, or, at minimum, constituted gross negligence.

111. As a direct and proximate result of Defendant Raso's conduct, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

## COUNT VIII
## Fraudulent Notarization and False Certification
### (against Defendant Raso)

112. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-111 as if set forth again here.

113. At all relevant times, Defendant Charles Raso, II was a commissioned notary public in the Commonwealth of Massachusetts and, in that capacity, was authorized to witness signatures and certify acknowledgments.

114. In connection with one or more of the transactions at issue, Defendant Raso executed notarial certificates stating that Plaintiff personally appeared before him and executed the documents.

115. Those certifications were false. Plaintiff did not appear before Defendant Raso and did not execute the documents in his presence.

116. The requirement of personal appearance is a fundamental condition of a valid notarization. A notary's certification of personal appearance when no such appearance occurred constitutes a false statement of material fact.

14

117. The notarizations performed by Defendant Raso were material to the acceptance and processing of the documents by the Defendants Bricklayers Funds and were relied upon as evidence of valid execution and consent.

118. By falsely certifying Plaintiff's personal appearance and execution, Defendant Raso enabled the processing of unauthorized withdrawals and loan transactions from Plaintiff's accounts.

119. The false certifications were made knowingly or with reckless disregard for their truth.

120. As a direct and proximate result of Defendant Raso's conduct, including Defendant Raso's false certifications, Plaintiff's funds were improperly distributed and Plaintiff suffered damages and financial losses, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

## COUNT IX
## Aiding and Abetting Fraud
### (against all Defendants)

121. Plaintiff hereby re-alleges and re-incorporates paragraphs 1-120 as if set forth again here.

122. The transactions at issue were carried out through the use of forged signatures and false notarizations, which constitute underlying fraudulent conduct.

123. Defendants were aware of facts and circumstances indicating that the documents were not properly executed, including irregularities in the documentation and the absence of reliable verification of Plaintiff's identity and presence.

124. Despite such knowledge, Defendants provided substantial assistance in the commission of fraud by accepting the documents, processing the transactions, and distributing funds based upon those documents.

15

125. Defendants' conduct went beyond mere inaction. Defendants affirmatively enabled the transactions by treating the forged and falsely notarized documents as valid and sufficient to authorize distributions.

126. Defendants had actual knowledge, or were willfully blind to the fact, that the documents were not properly executed, and provided substantial assistance and encouragement to the underlying fraudulent conduct.

127. As a direct result of Defendants' substantial assistance in the fraudulent conduct, Plaintiff's funds were withdrawn without authorization and Plaintiff suffered financial harm.

128. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

## COUNT X
## Civil Conspiracy
### (against all Defendants)

129. Plaintiff repeats and realleges the foregoing paragraphs 1-128 as if fully set forth herein.

130. Defendants, acting in concert with one another and/or with other individuals pursuant to a common understanding, agreed, and/or tacitly understood that transactions would be processed based upon documentation that did not reflect Plaintiff's actual execution or consent.

131. In furtherance of this common course of conduct, Defendants accepted and relied upon forged signatures and false notarizations and proceeded to process withdrawals and loan transactions from Plaintiff's accounts.

132. Defendants' coordinated conduct resulted in the unauthorized depletion of Plaintiff's retirement assets.

16

133. As a direct and proximate result of Defendants' concerted actions, Plaintiff suffered severe financial loss and related and consequential damages and losses.

134. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including but not limited to the unauthorized depletion of retirement assets, loss of investment growth, and related financial harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award compensatory damages and other damages in an amount to be determined at trial, but not less than $300,000;

2. Award all equitable and other relief pursuant to 29 U.S.C. § 1132(a)(3), et seq., including surcharge, restitution, other monetary relief, and other appropriate equitable remedies;

3. Order restoration of all improperly withdrawn funds to the Plaintiff;

4. Award attorneys' fees and costs;

5. Award pre- and post-judgment interest as permitted by law; and

6. Grant such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as of right.

RESPECTFULLY SUBMITTED
The Plaintiff
Danny Damigella, Pro Se

**Dated:** April 17, 2026

Danny Damigella
47 Arthur Street
Braintree, MA 02184

17